```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
                                         :      18cv715(DLC)
SYNGENTA CROP PROTECTION, LLC,           :
                                         :
                    Plaintiff,           :      OPINION AND ORDER
                                         :
         -v-                             :
                                         :
INSURANCE COMPANY OF NORTH AMERICA,      :
INC., CENTURY INDEMNITY COMPANY, and     :
ACE PROPERY AND CASUALTY INSURANCE       :
COMPANY,                                 :
                    Defendants.          :
                                         :
---------------------------------------- X
```

For the plaintiff:
Dorothea W. Regal
Joshua L. Blosveren
Hoguet Newman Regal & Kenney, LLP
10 East 40th Street
New York, New York 10016

For the defendants:
Robert F. Walsh
Rafael Vergara
White and Williams LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, Pennsylvania 19103-7395

DENISE COTE, District Judge:

This litigation arises out of an insurance coverage dispute regarding the relationship between a set of decades-old insurance policies and a subsequent settlement agreement. Syngenta Crop Protection, LLC ("Syngenta") seeks coverage under these policies for a set of claims involving asbestos exposure among contract workers associated with its predecessors (the "Asbestos Claims"). The defendant insurance companies,

Insurance Company of North America, Inc., Century Indemnity Company, and ACE Property and Casualty Insurance Company (collectively, "INA"), believe that the Asbestos Claims were released by a settlement agreement signed in 1999 (the "1999 Settlement"). Syngenta claims that INA has waived its right to enforce the release. For the following reasons, this Opinion determines that the disputes between the parties concerning the scope and enforceability of the release must be submitted to an arbitrator in the first instance.

## BACKGROUND

The following facts are undisputed for the purposes of this motion. From approximately 1958 to 1986, INA and its predecessors issued insurance policies of which Syngenta is the beneficiary. Syngenta has been named as a defendant in numerous lawsuits, collectively asserting claims on behalf of approximately 1,700 non-employee contractors, who claim to have been harmed from exposure to asbestos while working on Syngenta's premises in Louisiana -- a group of claims this Opinion refers to as the "Asbestos Claims." Syngenta first notified INA about the Asbestos Claims in March 1999, which at the time involved 325 plaintiffs, in order to seek a coverage determination.

That was not the first time these insurance policies had been invoked. After a long-running litigation concerning

environmental damage allegedly caused by Syngenta, a settlement agreement was reached in January 1999 (the "1999 Settlement"). Pursuant to the 1999 Settlement, Syngenta released any "Environmental Claims", a carefully defined term, that it had against INA. It also agreed that:

> In the event of any dispute with respect to this Settlement Agreement and Release, the Parties agree to resolve that dispute through arbitration, to be held in New York City, pursuant to the Rules of Arbitration of the American Arbitration Association.

As described above, two months after the 1999 Agreement was signed, Syngenta formally notified INA about the Asbestos Claims. The parties dispute numerous aspects of what happened over the next 18 years. What is not disputed, however, is that INA initially responded to the coverage request on April 15, 1999 through a reservation of rights letter, which listed numerous potential grounds for denying coverage, but not a defense of prior release under the 1999 Settlement. After years of periodic updates on the claims, Syngenta made a formal demand for payment on the Asbestos Claims in 2008. INA has since requested periodic status updates on the Asbestos Claims, but had never formally denied coverage until 2017, when it first invoked the defense of prior release pursuant to the 1999 Settlement.

On November 2, 2017, INA commenced an arbitration under the 1999 Settlement against Syngenta and the agreement's other

signatories, seeking a declaration that the Asbestos Claims were released by the agreement. On January 29, 2018, Syngenta filed a complaint in this Court seeking a declaration that INA is obligated to pay for the defense costs and liabilities incurred by Syngenta in connection with the Asbestos Claims, damages it has incurred thus far in connection with Asbestos Claims, and an injunction to preclude INA from pursuing the prior release defense against Syngenta in the arbitration. On February 1, 2018, Syngenta filed a preliminary and permanent injunction motion seeking to enjoin the arbitration.

At a conference on February 9, 2018, INA indicated that it would move for a stay of these proceedings pending arbitration. The Court deferred further briefing on plaintiff's motion for an injunction pending the resolution of this motion to stay. INA has represented that it will not proceed with the arbitration until the resolution of its motion. The motion for stay was filed on February 23 and became fully submitted on March 23.

## **DISCUSSION**

Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, provides authority for a court to stay an action pending the result of an arbitration.[1] It reads:

> If any suit or proceeding be brought in any of
> the courts of the United States upon any issue

---

[1] This Court has subject matter jurisdiction over this case due to diversity of citizenship of the parties. 28 U.S.C. § 1332(a).

> referable to arbitration under an agreement in
> writing for such arbitration, the court in which
> such suit is pending, upon being satisfied that
> the issue involved in such suit or proceeding is
> referable to arbitration under such an agreement,
> shall on application of one of the parties stay
> the trial of the action until such arbitration
> has been had in accordance with the terms of the
> agreement, providing the applicant for the stay
> is not in default in proceeding with such
> arbitration.

9 U.S.C. § 3. A district court "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997). The parties do not dispute that there has been an agreement to arbitrate. This dispute instead centers on whether the arbitrator or the court has the power to decide whether the underlying issues are subject to arbitration, and, if the court has that power, whether the issues should be arbitrated.

### I. Waiver by Conduct

Syngenta contends that INA has waived its right to seek arbitration through its failure to assert the 1999 Settlement as a defense to coverage for more than 18 years after being notified of the Asbestos Claims. INA argues that the validity of the waiver argument is for the arbitrator to decide, and that in any event there has not been such a waiver.

In Howsam v. Dean Witter Reynolds, Inc., the Court stated that "waiver, delay, or a like defense to arbitrability" are

defenses that are presumptively for an arbitrator, not a court, to decide. 537 U.S. 79, 84-85 (2002) (citing Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); see also BG Group, PLC v. Republic of Argentina, 134 S. Ct. 1198, 1207 (2014); Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 394 (2d Cir. 2011). These types of issues, which Howsam described as "gateway procedural disputes," are distinguished from "questions of arbitrability", which are "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Howsam, 537 U.S. at 84-85. Questions of arbitrability, in contrast to gateway procedural disputes, are presumptively for a court to decide. Of course, these are only default presumptions, and the parties can modify them through the language of their arbitration clause. Id. at 85.

Despite the general presumption that arbitrators decide questions of waiver, the Second Circuit has recently reaffirmed that "[w]hen the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver." Meyer v. Uber Technologies, Inc., 868 F.3d 66, 80-81 (2d Cir. 2017) (citing Bell v. Cendant Corp., 293 F.3d 563, 569 (2d Cir. 2002)). This waiver-by-litigation-conduct exception has been carefully circumscribed. Bell characterized the Second Circuit's cases as

6

holding that "[o]rdinarily a defense of waiver . . . is a matter to be decided by the arbitrator, with a single exception: that to prevent forum shopping the district court could properly decide the question [of waiver] when the party seeking arbitration had already participated in litigation on the dispute." Id. at 569 (emphasis in original) (citation omitted). In an earlier case, Doctor's Associates, Inc. v. Distajo, the Second Circuit similarly characterized its decisions where it decided waiver issues as involving situations where "the party had previously participated in court proceedings to litigate the same dispute." 66 F.3d 438, 456 (2d Cir. 1995). The court then held that it had "distinguish[ed] between cases where the waiver defense was based on prior litigation by the party seeking arbitration -- when the court should decide the issue of waiver -- and those when the defense was based on other actions." Id. at 456. No Second Circuit case in the last 60 years has treated waiver as an issue for a court to decide absent prior litigation involving the dispute at issue.

The question of whether INA has waived its right to arbitrate through its conduct is one for the arbitrator, not this Court. Syngenta does not assert, nor could it assert, that INA has waived its right to arbitrate through any litigation conduct. Because Syngenta's assertion that INA has waived the right to arbitrate is a "waiver, delay, or like defense to

7

arbitrability," Howsam, 537 U.S. at 84-85, involving out-of-court conduct, that gateway procedural dispute is presumptively one for the arbitrator. Nothing in the arbitration clause here evidences any intention to shift that presumption. Accordingly, Syngenta's claim that INA has waived its right to arbitrate through conduct is for the arbitrator to decide, not this Court.

Relying on some of the discussion in Distajo, Syngenta asserts that the court must decide all questions of waiver of the right to arbitrate through conduct because such conduct amounts to a "default in proceeding with" arbitration under 9 U.S.C. § 3. Distajo, 66 F.3d at 454-55. The Distajo discussion, however, also notes that the inquiry has become rather divorced from the statutory text, and goes on to explicitly distinguish between a court's power to decide waiver issues involving litigation conduct, and other waivers. Id. at 456.

Syngenta also claims, based on out-of-circuit authority, that issues of waiver by conduct are presumptively for the court, not the arbitrator. The cited cases, however, are all cases that involved litigation conduct, not out-of-court conduct. See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 14-15 (1st Cir. 2005); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221-22 (3d Cir. 2007).

## II. Waiver Under New York Insurance Law

Syngenta next contends that INA has waived its right to assert prior release as a defense to insurance coverage under New York Insurance Law § 3420. Syngenta further argues that that this contention is outside the scope of the arbitration clause because it is independent of, or collateral to, the 1999 Settlement. That is, Syngenta believes that this argument turns not on the question of whether the Asbestos Claims were in fact released under the 1999 Settlement, but rather on whether INA has waived its right to assert this defense to covering the Asbestos Claims through its delay.

This variety of waiver argument, unlike the waiver issue discussed above, is best characterized as a "question of arbitrability," because it is not a procedural defense to the arbitration going forward at all, but rather a defense going to the merits of the underlying dispute between Syngenta and INA. The parties agree that this argument should be analyzed as a "question of arbitrability."

The parties disagree, however, over whether the court or the arbitrator decides the question of arbitrability -- that is, who decides whether Syngenta's argument under New York Insurance Law is within the scope of the arbitration clause.

> Parties to an arbitration agreement "may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable." But the issue of arbitrability may only be referred

9

> to the arbitrator if "there is clear and
> unmistakable evidence from the arbitration
> agreement, as construed by the relevant state
> law, that the parties intended that the question
> of arbitrability shall be decided by the
> arbitrator."

Bell, 293 F.3d at 566 (quoting First Options, 514 U.S. at 944).

New York Law, which the parties agree governs this issue, "follow[s] the same principles [as federal law] when deciding whether the parties to an arbitration agreement have clearly and unmistakably indicated an intent to arbitrate arbitrability." Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124 (2d Cir. 2003). Under these standards, arbitration clauses that use language mandating arbitration of, for example, "all disputes . . . concerning or arising out" of an agreement constitute clear and unmistakable delegations of the power to decide questions of arbitrability to the arbitrator. Id. at 121-22 (collecting cases); see Smith Barney, Inc. v. Hause, 238 A.D.2d 104 (1st Dep't 1997) (clause requiring arbitration of "any controversy . . . with respect to this agreement or the breach thereof" constituted clear and unmistakable delegation to the arbitrator to decide question of arbitrability), aff'd sub nom. Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39 (1997); see also Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 897-98 (2d Cir. 2015) (in dicta, noting that clause requiring "any other dispute . . . in connection with the terms or provisions of this Agreement" is a clear and unmistakable

10

delegation to the arbitrator to decide questions of arbitrability).

Parties can further reflect their intent to arbitrate questions of arbitrability by incorporating rules of an arbitration association that empower arbitrators to decide such questions into their agreement. Incorporation of such rules has repeatedly been held to constitute a clear and unmistakable intention to delegate questions of arbitrability to the arbitrator. See Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) (AAA rules); Schneider v. Kingdom of Thailand, 688 F.3d 68, 72 (2d Cir. 2012); Republic of Ecuador, 638 F.3d at 394-95.

The arbitration clause in the 1999 Settlement requires that "any dispute with respect to" the agreement be resolved through arbitration. This language, which is effectively identical to that of clauses that have previously been held to be clear and unmistakable delegations to the arbitrator of questions of arbitrability, must also be held to reflect a clear and unmistakable delegation to the arbitrator to decide questions of arbitrability.

The arbitration clause also provides that the rules of the American Arbitration Association ("AAA") are to govern. Although the arbitration clause is silent as to exactly which rules of the AAA would apply, the AAA's commercial arbitration

rules, both when the agreement was signed in 1999 and now, state that "the parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for . . . arbitration by the AAA of a domestic commercial dispute without specifying particular rules." The 1999 Agreement and the disputes here both arise out of, and are, domestic commercial disputes. And choosing to use the AAA's rules necessarily implies, absent evidence to the contrary, that the AAA is to administer the arbitration. See Prostyakov v. Masco Corp., 513 F.3d 716, 723-24 (7th Cir. 2008). There is no ambiguity in concluding that the parties to the 1999 Agreement, by choosing the rules of the AAA, meant to choose the AAA's commercial arbitration rules.[2]

The AAA commercial arbitration rules provided in 1999, and do today, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the agreement." This rule, necessarily incorporated into the parties' arbitration clause, clearly and unmistakably demonstrated the parties' intent to delegate the power to determine arbitrability to the arbitrator. See Contec, 398 F.3d at 208.

---

[2] The AAA also has supplementary rules for insurance coverage disputes, but these rules incorporate the commercial arbitration rules in all relevant respects.

Syngenta does not attempt to distinguish the cases holding very similar clauses to be clear and unmistakable delegations to the arbitrator to decide questions of arbitrability. Nor can it refute that the applicable AAA rules are its commercial arbitration rules, which also provide an unmistakable delegation to the arbitrator to decide arbitrability. Accordingly, this question of arbitrability is for the arbitrator.

**CONCLUSION**

The action is stayed in favor of arbitration. The parties shall submit a joint letter on the status of the arbitration proceedings by August 31, 2018. The parties shall inform the Court within seven (7) days after the conclusion of the arbitral proceedings.

SO ORDERED:

Dated:   New York, New York
         March 29, 2018

_____
DENISE COTE
United States District Judge